**Kim Ann DARST, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION Respondent.**

No. 02–2446.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 24, 2003.

Decided Feb. 6, 2003.

Before NYGAARD, AMBRO and LOURIE,* Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

Kim Ann Darst ("Darst") seeks review of an order of the National Transportation Safety Board ("NTSB") revoking her ATP, Ground Instructor, Flight Engineer and Flight Instructor certificates. We affirm the NTSB.

### 1. *Statutory Scheme*

The Federal Aviation Act is a "split-enforcement regime." *Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 576 (D.C.Cir.1999). Under this regime, Congress has given the FAA both rulemaking and enforcement authority. *Garvey,* 190 F.3d at 576. Congress has given adjudicatory authority to the NTSB. *Id.* A pilot whose certificate is affected by an FAA

* Honorable Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by designation.

order may appeal to the NTSB. The appeal is first heard by an ALJ, whose final decision can be appealed to the entire Board. While the Board "is not bound by findings of fact of the [FAA] Administrator," the Board is "bound by all validly adopted interpretations of laws and regulations . . ., unless [it] finds an interpretation is arbitrary, capricious, or otherwise not according to law." *Id.*

During our review of the Board's decision, its findings of fact are conclusive "if supported by substantial evidence." 49 U.S.C. § 44709(f). Like all agency action, Board decisions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### 2. *Factual and Procedural Background*

This case began when the FAA requested that Darst provide her pilot logbooks in connection with an FAA investigation of an accident involving a gyroplane operated by Darst.[1] That request was made in person, on August 1, 2001, by FAA Inspector Bourey. It was renewed in a letter sent on August 7, 2001, requesting a number of records, including "pilot's logs showing all of [Darst's] flight time," in an administrative subpoena sent in late August 2001, and in a letter sent on October 25, 2001.

While Darst sent a number of records to the FAA, including, she claims, a page torn from her diary, the FAA inspectors testified that they did not receive any pilot logbooks. As a result of her failure to comply with this request, the FAA issued an Emergency Order of Suspension of her ATP, or pilot, certificate. After the Order of Suspension had been issued, Darst was observed by FAA inspectors on February 6, 2002 flying a helicopter (and, allegedly, making an obscene gesture at the inspectors). The FAA issued an Order of Revocation of Darst's ATP, Ground Instructor, Flight Engineer and Flight Instructor certificates as a result of her failure to comply with the Order of Suspension.

Darst claims not to have been aware that her pilot certificate had been suspended. Her address of record with the FAA is that of her parents. Darst's mother, Della Darst, performs various tasks for Darst's business, including bookkeeping and picking up and reading Darst's mail. She testified that she had received, signed for, and read all relevant correspondence. Darst's business manager testified that they had not told her about the Order of Suspension because "when she receives these bad reports on what she is doing, . . . she has stomach problems."

Darst appealed both orders. A hearing in the consolidated appeal was held on February 21, 2002. At the conclusion of the proceedings, the ALJ issued an oral decision, concluding that Darst had made a "good faith effort" to comply with the FAA's request to provide her pilot logbooks and modifying the sanction sought by the FAA to a six-month suspension. The ALJ also concluded that Darst had received the Order of Suspension, but modified the sanction sought by the FAA to a six-month suspension of Darst's pilot certificate because she posed no threat. Both parties appealed.

On March 29, 2002, the NTSB (over a strong dissent) granted the FAA's appeal and denied Darst's appeal, affirming both the suspension and the revocation orders and concluding that the offenses warranted revocation of all of her certificates. The NTSB concluded that Darst had "pro-

---

**1.** The pilot logbooks were requested in order to assess Darst's competence to fly the aircraft, and whether she had complied with regulatory requirements relating to her qualifications.

vided no flight records that satisfied her obligation to document and record recent flight experience and flight review requirements." While there was "abundant and persuasive evidence" that Darst had not actually given the diary page to the FAA, whether she had done so did not matter because the "brief, cryptic diary pages" did not satisfy the requirements of 14 C.F.R. § 61.51(b). This appeal followed.

### 3. *Discussion*

Darst makes three arguments on appeal, two in support of her claim that her appeal was improperly denied by the NTSB, and one in support of her claim that the FAA's appeal was improperly granted by the NTSB. She claims that her pilot certificate was improperly suspended because (a) the suspension resulted from her failure to comply with a subpoena that asked for information she was not required to maintain, the subpoena therefore was invalid, and her certificate improperly suspended, and (b) she provided all the information that she was required to provide. She argues that her certificates were improperly revoked because she lacked actual knowledge that her pilot certificate had been suspended at the time of the February 6 helicopter flight. Finally, Darst claims that the FAA's appeal was improperly granted because the revocation of her certificates was not warranted. We reject Darst's claims and affirm the NTSB's decision to reject her appeal and grant the FAA's appeal.

### A. *Was the Subpoena Valid?*

The stated reason given by the FAA for issuing the Order of Suspension was Darst's failure to comply with requests, made by letters and subpoena, that she provide "pilot logbooks showing all of [her] flight time." Darst argues first that because she is not required by law to log all of her flight time, but only the flight time required by 14 C.F.R. § 61.51, the subpoena asked for information she was not legally required to provide and was therefore "illegal and unenforceable." As a result, she contends, the Order of Suspension was legally insufficient. In addition, Darst claims that she did, in fact, comply with the letters and subpoenas by providing the excerpt from her calendar diary, and that the conclusion that she had not, which led to the decision to issue the Order of Suspension, was therefore erroneous.

We uphold actions of the FAA unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, the Order of Suspension was legally sufficient. To the extent that the subpoena requested more information than was in Darst's possession, we agree with the NTSB that "the Administrator's requests were not rendered invalid because they sought more information than respondent keeps or is required to keep; they simply do not have to be complied with to the extent that they were overbroad and could not be fulfilled."

Darst cites to cases where courts have struck down subpoenas as unreasonably broad. But this does not prove that a subpoena that requests more information than an individual is required by law to keep is invalid. *See, e.g., In re Grand Jury Subpoena,* 829 F.2d 1291 (4th Cir. 1987). In fact, Darst does not now argue that the subpoena was unreasonably broad, nor did she make such an argument at the time the subpoena was served. Moreover, the validity of the scope of subpoena is not before this Court: the Order of Suspension was issued not because Darst failed to provide all of the information requested by the subpoena, but because she failed to provide all of the information under 14 C.F.R. § 61.51 that she

was required to maintain and to "present [her logbook] ... for inspection upon a reasonable request." *Id.*

■ We uphold the NTSB's conclusion that Darst failed to furnish the required information to the FAA. In reviewing an appeal from the NTSB, we are bound by its findings of fact if supported by substantial evidence. 49 U.S.C. § 44709. The ALJ concluded that Darst had made a good faith effort to comply with the regulations, presumably because the ALJ believed her testimony that she had produced the one-page diary excerpt to the FAA prior to the date of the hearing. The NTSB concluded, first, that there was "abundant and persuasive evidence" that Darst had not provided the diary excerpt prior to the hearing. The NTSB's ultimate conclusion that Darst had violated 14 C.F.R. § 61.51(b) did not, however, rest on this adverse credibility determination, but rather on its conclusion that the diary excerpt failed to meet her obligation to document and record the information required by 14 C.F.R. § 61.51.

We have reviewed the record, and find that the substantial evidence test has been more than satisfied. First, the plain language of 14 C.F.R. § 61.51 does not provide a good faith exception to the requirement that pilots keep flight logs containing certain listed types of information. The ALJ's conclusion that any failure to comply was in good faith is, therefore, irrelevant. Second, there is substantial evidence that the diary excerpt provided by Darst did not satisfy the requirements of 14 C.F.R. § 61.51. Darst herself conceded at the hearing that the excerpt did not

record her last biennial flight review. Further, the diary entry, on its face, does not include all of the details required by 14 C.F.R. § 61.51(b)(1) (including date, total flight or lesson time, locations where the aircraft departed and arrived, type and identification of aircraft, name of safety pilot, if required).[2] Substantial evidence, therefore, supports the NTSB's conclusion that Darst violated 14 C.F.R. § 61.51(b).

## B. Operation of An Aircraft With A Suspended Pilot Certificate

■ Darst argues that her certificates should not have been revoked because she did not knowingly operate an aircraft while her pilot certificate was suspended, as she did not actually know of the suspension order until February 6, 2002, after she had been spotted flying a helicopter by FAA inspectors. We see no reason to disturb the conclusion of the ALJ and the NTSB that the evidence shows that she had actual notice of the suspension at the time of her ill-fated helicopter flight. Even were we to disagree, the uncontroverted evidence demonstrates that Darst had constructive knowledge that her pilot certificate was suspended. The FAA mailed the Order of Suspension to the proper address in the proper fashion. That Darst suffers from stomach trouble when she receives bad news does not mean that the FAA is somehow estopped from giving her bad news, and does not excuse her mother's and her attorney's alleged failure to tell her of her suspension. We conclude that Darst had actual and constructive notice of her suspension at the time of the February 6 flight, and the FAA was therefore justi-

---

**2.** In addition, the regulation explicitly states that the documentation must be recorded "in a manner acceptable to the Administrator." 14 C.F.R. § 61.51. The FAA would likely be acting within its discretion were it to conclude that providing a ripped sheet of paper with several cryptic notations (as was done here) does not satisfy the requirement that a pilot keep and provide a logbook, regardless whether all relevant information was provided.

fied in sanctioning her for having violated that suspension.

## C. Sanctions

The decision of the NTSB to reinstate the sanctions imposed by the FAA is not arbitrary and capricious. The Board may "amend, modify, or reverse the order" of the ALJ "when the Board finds ... safety in air commerce or air transportation and the public interest do not require affirmation of the order." 49 U.S.C. § 44709. The consistent position of the NTSB has been that "knowingly operating an aircraft while under suspension is one of the most serious violations an airman can commit, for it reveals, perhaps as no other offense does, contempt for the laws that govern the exercise of the privileges granted to the holder of a certificate and for those responsible for enforcing those laws in the interest of air safety." *Administrator v. Goade*, 5 N.T.S.B. 2403, *2 (Nov. 19, 1987) (rejecting argument that revocation was unwarranted because "intentionally operating during a suspension is perhaps the ultimate defiance of regulatory authority" and "[r]evocation is unquestionably the appropriate sanction for such violations"); *see also Administrator v. Stange*, NTSB Order No. EA–4443 (April 8, 1996) (rejecting ALJ's conclusion that mitigating factors warranted suspension, not revocation, because "[n]o case law has been presented to us, and we are aware of none, stating that an airman's qualifications are not implicated by the deliberate act of operating an aircraft when he knows his certificate is under suspension. To the contrary, our precedent unequivocally establishes that revocation is warranted when an airman has operated an aircraft while his pilot certificate was suspended, as such action demonstrates that an airman lacks the requisite care, judgment, and responsibility required of a certificate holder.").

Reaching the conclusion that operating with a suspended pilot certificate sufficiently calls into question the "care, judgment and responsibility" of a pilot to justify revocation of his or her certificates is within the discretion of the NTSB. Imposing the sanction of revocation so that the order in this case conforms with this consistently-applied principle is not arbitrary and capricious.

For the reasons stated above, we affirm the order of the NTSB.